## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| TONYA LASHAY WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:17-CV-00259-TMP |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION

## I.       Introduction

The plaintiff, Tonya Lashay White, appeals from the decision of the

Commissioner[1] of the Social Security Administration ("Commissioner") denying

her application for a period of disability and Disability Insurance Benefits ("DIB").

Ms. White timely pursued and exhausted her administrative remedies and the

decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g),

---

[1] It appears, from the briefs filed by the Government in other Social Security cases and from news reports, that there is neither a Commissioner nor an Acting Commissioner currently serving in the Administration, but that the functions of the job still are being performed by Nancy A. Berryhill.

1383(c)(3). The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 22).

The plaintiff was 42 years old on the date of the ALJ's opinion. (Tr. at 23). Her past work experience includes employment as a poultry trimmer and poultry eviscerator. (Tr. at 23). The plaintiff claims that she became disabled on April 18, 2013, from "bipolar disorder; panic disorder with agoraphobia; major depressive disorder, recurrent; severe and posttraumatic stress disorder; severe anemia; severe headaches; chronic low back pain; severe right forearm pain and loss of grip strength s/p[2] surgery with pins and plates." (Doc. 11, p. 3).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. See 20 C.F.R. §§ 404.1520, 416.920; see also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. Id. If she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. Id. The decision depends on the medical

---

[2] The court assumes the abbreviation "s/p" means "secondary to" or "post" surgery.

evidence in the record.  See Hart v. Finch, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, she will be found disabled without further consideration.  Id.  If they do not, a determination of the claimant's residual functional capacity will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Residual functional capacity ("RFC") is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.945(a)(1).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops.  Id.  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  Id.  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the

claimant can do other work, the claimant is not disabled. Id. The burden is on the Commissioner to demonstrate that other jobs exist which the claimant can perform; once that burden is met, the claimant must prove her inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that the plaintiff had not engaged in substantial gainful activity since the application date, April 18, 2013. (Tr. at 13). According to the ALJ, the plaintiff has the following impairment that is considered "severe" based on the requirements set forth in the regulations: "bipolar disorder." Id. He also determined that the plaintiff's "dyspnea, bradycardia, heart murmur, edema, numbness, and tingling" were related to anemia resulting from menorrhagia, were responding well to treatment, and are non-severe. Id at 13-4. Additionally, Plaintiff's allergic rhinitis, lower back pain, and right arm pain resulting from a prior fracture and surgery are non-severe. Id at 14-5. He determined that the plaintiff's carpal tunnel syndrome was not supported by evidence of a medically determinable physical or mental condition (Tr. at 15). The ALJ found that the plaintiff's severe and non-severe impairments, separately and in combination, neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id at 16. The ALJ found that the plaintiff's physical impairments were not limiting as

required by the listings. Id. The ALJ found the plaintiff to have moderate restriction in activities of daily life, moderate difficulties in social functioning, and moderate difficulties with regard to concentration and persistence. Id. The ALJ determined that the plaintiff has the residual functional capacity to perform work at all exertional levels with non-exertional limitations. Id at 17. The ALJ further elaborated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant can understand, remember, and carry out simple instructions, but not detailed or complex instructions; can adapt to workplace changes that are infrequent and introduced gradually; can occasionally interact with the public and frequently interact with co-workers and supervisors; and lastly, is capable of sustaining concentration and attention for at[least] two (2) hours at a time with customary breaks throughout an eight-hour workday.

(Tr. at 17-8)

According to the ALJ, the plaintiff is able to perform her past relevant work as a poultry eviscerator and poultry trimmer, she is a "younger individual," and has "at least a high school education," as those terms are defined by the regulations. (Tr. at 23). In addition to her past work as a poultry trimmer and poultry eviscerator, the ALJ determined that there are a significant number of other jobs in the national economy that she is capable of performing, such as a cleaner, hand

packer, or laundry worker.  (Tr. at 24).  The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, since April 18, 2013, the date the application was filed."  Id.


## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  See Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  See Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  Id.  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting Consolo v. Federal Mar. Comm'n, 383 U.S. 607, 620 (1966)).  Indeed, even if this

court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence. Miles, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. See Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984).

The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). Whether the plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no

power to reverse that finding as long as there is substantial evidence in the record supporting it.

## III.    Discussion

Plaintiff Tonya Lashay White asserts nine points of error that she argues require the case to be remanded to the Commissioner for further consideration. (Doc. 11, p. 1).  First, Plaintiff alleges that the ALJ failed to give sufficient weight to the opinion of Dr. Odjegba, a treating physician, and did not articulate reasons for rejecting his opinion.  Id.  Second, Ms. White asserts that the ALJ did not consider all of her severe impairments.  Id.  Third, she argues that the ALJ should have given more weight to the opinion of Dr. Feist or more clearly articulated the reasons that the opinion was discredited.  Id.  Fourth, Ms. White claims it was reversible error for the ALJ to give so little weight to the Commissioner's own consultative examiner.  Id.  Fifth, Plaintiff argues that the ALJ's finding that she can perform past work is erroneous, not supported by substantial evidence, and not in accordance with correct legal standards.  Id.  Sixth, the plaintiff asserts that the ALJ did not articulate sufficient reasons to find the plaintiff not credible or to discredit her testimony.  Id.  Seventh, Plaintiff asserts that she meets the requirements for Listing 12.04 and/or 12.06, and the ALJ's finding to the contrary is not backed by substantial evidence.  Id.  Ms. White's eighth asserted error is that

the Appeals Committee failed to consider newly submitted evidence dated after the ALJ decision and failed to include that evidence in the record. Id. Ninth and lastly, Plaintiff asserts that the ALJ erroneously did not fully consider all of the side effects of her medication. Id.

A. *Treating Physicians*

Ms. White alleges that the opinions from her two treating sources, Dr. Odjegba and Dr. Feist, should have been given greater weight, and that the ALJ failed to show good cause for giving the opinions less weight. (Doc. 11, pp. 20-2, 24-5). The Commissioner argues that there is substantial evidence to support the ALJ's decision to give less weight than is normally afforded to the opinion of a treating source. (Doc. 16, pp. 17, 20). The ALJ gave "little weight" to the opinion of Dr. Odjegba because she found that the opinion "is not supported by the objective medical evidence or his own PE findings, which show little abnormalities." (Tr. at 16). The ALJ gave "little weight" to the opinion of Dr. Feist because she found it was "without substantial support from other evidence of record," "quite conclusory," and expressed limitations that were "extremely out of proportion with his treatment notes and other evidence of record." (Tr. at 20).

A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting Lewis v.

Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The

weight to be afforded a medical opinion regarding the nature and severity of a

claimant's impairments depends, among other things, upon the examining and

treating relationship the medical source had with the claimant, the evidence the

medical source presents to support the opinion, how consistent the opinion is with

the record as a whole, and the specialty of the medical source.  See 20 C.F.R.

§§ 404.1527(d), 416.927(d).  Furthermore, "good cause" exists for an ALJ to not

give a treating physician's opinion substantial weight when the: "(1) treating

physician's opinion was not bolstered by the evidence; (2) evidence supported a

contrary finding; or (3) treating physician's opinion was conclusory or inconsistent

with the doctor's own medical records."  Phillips v. Barnhart, 357 F.3d 1232, 1241

(11th Cir. 2004) (citing Lewis, 125 F.3d at 1440); see also Edwards v. Sullivan,

937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where

the opinion was contradicted by other notations in the physician's own record).

The Court also must be aware of the fact that opinions such as whether a

claimant is disabled, the claimant's residual functional capacity, and the

application of vocational factors "are not medical opinions, . . . but are, instead,

opinions on issues reserved to the Commissioner because they are administrative

findings that are dispositive of a case; i.e., that would direct the determination or

decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(d).  The Court is

interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." Lewis, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. See, e.g., 20 C.F.R. § 404.1546(c).

### 1. Dr. Odjegba

The ALJ gave "little weight" to Dr. Odjegba's opinion in the Physical Capacities Form completed on May 28, 2015. (Tr. at 15). In that opinion, Dr. Odjegba opined that Plaintiff: (1) could stand for two hours; (2) would need to lie down, sleep, or prop up her feet for four out of eight day time working hours; (3) could not push or pull well enough to use controls; and (4) had some manipulative limitations with both her left and right hand. (Tr. at 560). He indicated that the plaintiff's restrictions were caused by "lumbago, severe anemia, carpal tunnel syndrome, hand pain, and bipolar disorder." Id. He also stated that the plaintiff experienced nausea and vomiting as side effects of her medication. Id.

The ALJ noted that these finding were excessive in comparison to the limitations which Dr. Odjegba noted during his physical examinations of the plaintiff. (Tr. at 15). The ALJ found that the doctor's treatment notes do not show that Dr. Odjegba ever diagnosed or treated the plaintiff for carpal tunnel syndrome

or that she ever consistently reported chronic pain to him.  Id.  Additionally, she noted that the plaintiff's anemia was a seriously limiting condition, but the plaintiff had responded well to treatment and her red blood cell levels where almost back to normal.  Id.  Additionally, the ALJ found that the limitations expressed in Dr. Odejegba's opinion were not explained by the plaintiff's bipolar disorder.  Id. Similarly, Dr. Odjegba opined that the plaintiff experiences nausea and vomiting as side effects of her medication, yet the plaintiff never reported those side effects during her check-ups.  Id.

The court has reviewed the medical records. Plaintiff has a history of low back pain.  On October 4, 2012, she was treated at Gadsden Memorial Hospital and on October 11, 2012, she was treated at Riverview Medical Center for back pain (lumbago).  (Tr. at 346-7, 505).  However, she did not report back pain as a symptom or receive treatment from Dr. Odjegba for it.  See (Tr. at 475-540). Similarly, Plaintiff has a history of "profound" anemia, which required a blood transfusion.  (Tr. at 448-470).  Plaintiff's anemia was caused by menorrhagia, and through a combination of Provera, iron treatments, and blood transfusions, her anemia is vastly improved.  (Tr. at 518, 527, 535, 548).  The court agrees with the ALJ that it can find no mention at all where Dr. Odjegba diagnosed the Ms. White as having carpal tunnel syndrome, nor did he ever prescribe treatment for the condition.  See (Tr. at 16).  There also is no support in the treatment notes for the

opinion that the plaintiff is suffering from disabling hand pain. Plaintiff complained of hand pain on August 26, 2014, but at her next visit on September 16, 2014, she no longer reported the pain and did not report it again subsequently. (Tr. at 479, 485-7). Plaintiff has a long history of mental health issues, including bipolar disorder. (Tr. at 415, 429, 432, 471-3, 475-6, 552). However, given that this is a mental impairment, the court does not see how this could explain the significant physical limitations in Dr. Odjegba's opinion. In sum, the court finds that the ALJ had good cause to give Dr. Odjegba's opinion only "little weight."

### 2. Dr. Feist

Dr. Feist was Ms. White's treating psychiatrist, and the plaintiff argues that the ALJ did not have good cause to reject Dr. Feist's opinion. (Doc. 11, p. 24). The Commissioner argues that the ALJ was correct in her determination that the limitations expressed in the Mental Health Source Statement were not supported by Dr. Feist's treatment notes. (Doc. 16, p. 17). In a form dated May 13, 2015, he opined that the plaintiff could "understand, remember, or carry out very short and simple instructions." (Tr. at 551). However, he also opined that Plaintiff could not (1) "maintain attention, concentration, and/or pace for periods of at least two hours," (2) "perform activities within a schedule, maintain regular attendance, and be punctual within customary practices," (3) "sustain an ordinary routine without

special supervision," (4) "accept and respond appropriately to criticism from supervisors," or (5) "maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness." Id. Additionally, Dr. Feist stated that he would expect Plaintiff to miss 15-20 days of work out of a 30-day period due to her symptoms. Id. He could not opine whether these limitations dated to April 18, 2013, when the plaintiff alleges she became disabled, presumably because he was not treating the patient at that time. Id.

The ALJ gave this opinion "little weight" because it was conclusory and inconsistent with the medical evidence. In reviewing the medical records, the court must note, as an initial point, that many of the treatment notes from Dr. Feist are illegible. See (Tr. at 431, 557). Given that neither the ALJ nor counsel for either side seems to have been able to decipher them, the court's analysis will proceed from that point. See (Tr. at 20-1), (Doc. 11, p. 24-6), (Doc. 16 at 17-20). On November 19, 2014, Dr. Feist noted that the plaintiff was depressed; had insomnia; had "fair" judgment, insight, appetite, and energy/motivation; had tangential thought process, had obsessive thought content; had agitated behavior; was of adequate weight; and had an overall risk level of moderate. (Tr. at 431). The written treatment notes record that "[she] doesn't like to be around people," "depressed," "thoughts of suicide," and "father died of heroin O.D." Id. On March 11, 2015, Plaintiff again saw Dr. Feist. (Tr. at 557). This time he noted that

she was depressed and anxious; had insomnia; had fair insight, judgment and appetite; had a tangential and loose thought process; was having auditory/visual hallucinations; had poor energy/motivation; exhibited agitated behavior; had inadequate thought and concentration; had decreased weight; and had an overall risk level of "high." Id. The written treatment notes indicate "not sleeping well," "awakens at 4-5 a.m.," "lives with 25 y.o. daughter," "has 3 grandchildren." Id. These evaluations depict a serious degree of mental impairment and worsening condition. Despite this apparent worsening of her condition, Dr. Feist reported her progress as "fair," with the only follow-up plan was for plaintiff to continue her weekly counseling sessions and to see Dr. Feist again in 3 to 6 months. (Tr. at 557).

However, when compared with other treatment records from other care providers, the evaluations seem wholly incongruous with other records from the time frame. Before the plaintiff met with Dr. Feist on November 19, 2014, she was treated by a therapist at CED Mental Health on October 23, 2014, where she was noted to have appropriate appearance, dysphoric mood, and normal affect. (Tr. at 433). She also was noted to be oriented to person, place, time, and situation. Id. She did report stress, anxiety, and depression, but also reported that she left the house three times a week. Id. Just two weeks before seeing Dr. Feist, plaintiff was seen by Dr. Odjegba for a follow-up on her menorrhagia and anemia on

November 5, 2014. (Tr. at 495). At this visit Ms. White was noted to be "negative" for anxiety and depression and as having "no changes to sleep patterns." Id. She also made no complaints related to her mental health at the appointment. Id. Plaintiff was again seen by Dr. Odjegba on March 16, 2015, just five days after seeing Dr. Feist, for a rash and for a follow up of her menorrhagia. (Tr. at 542). Ms. White again reported "no changes to sleep patterns" and was noted to have "appropriate mood and affect." Id. at 543, 547. A month later, plaintiff was treated by another therapist at CED on April 17, 2015. (Tr. at 556). At this visit, Ms. White indicated that she was having depression and paranoia, but was noted to be oriented to person, place, time, and situation. Id. Her appearance was appropriate, her mood euthymic, and her affect was normal. Id. She reported that "things were going okay," but was afraid that an abusive ex-boyfriend might be released from prison soon. Id.

Additionally, the treatment notes from Dr. Feist are quite brief and conclusory. See (Tr. at 431, 557). They do not provide the court with additional evidence to substantiate the medical opinions that he provided. Id. This fact, in combination with the fact that Dr. Feist's evaluations and opinion indicated a much lower level of psychiatric functioning than any other piece of medical evidence from the time frame, provided substantial evidence to support the ALJ's opinion, and provided good cause for the ALJ to afford less weight to Dr. Feist's opinion.

The ALJ did not err in reaching her conclusions regarding the weight to be accorded these treating physicians' opinions.

### B. *Severe Impairments*

Plaintiff contends that the case should be remanded because the ALJ found that she had only one severe impairment—bipolar disorder. (Doc. 11, p. 23). She argues that her "panic disorder with agoraphobia; major depressive disorder, recurrent, severe; posttraumatic stress disorder; headaches; anemia; chronic low back pain; [and] severe right forearm pain and loss of grip strength s/p surgery with pins and plates following fracture during motor vehicle accident" also should have been considered severe impairments. Id. The Commissioner argues that the ALJ considered all of the plaintiff's severe impairments. (Doc. 16, p. 6).

To the extent that Plaintiff relies on McDaniel v. Bowen for the proposition that "only claims based on the most trivial impairments [should be] rejected," this is without merit in the context of this case. See (Doc. 11, p. 24) (citing McDaniel v. Bowen, 800 F.2d 1026 (11th Cir. 1986). In McDaniel v. Bowen, the court reiterated the Brady standard for the determination of severe impairment. 800 F.2d at 1031 (citing Brady v. Heckler, 724 F.2d 914 (11th Cir.1984)). That standard provides an "impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age,

education or work experience." McDaniel, 800 F.2d at 1031 (citing Brady, 724

F.2d 914). However, both McDaniel and Brady were cases where the plaintiff was

found not to have any severe impairment at all. See McDaniel, 800 F.2d 1026,

Brady 724 F. 2d 914. Thus, in both cases, the five-step sequential process was

ended at Step Two. See McDaniel, 800 F.2d 1026, Brady 724 F. 2d 914. In the

plaintiff's case, however, the analysis did not end at Step Two. (Tr. at 13-16).

Rather, because the plaintiff was found to be suffering from at least one severe

impairment, the ALJ continued to Step Three. (Tr. at 16). The number or nature

of severe impairments found at Step Two is unimportant if the sequential analysis

continues because, in assessing the claimant's RFC at Step Four, all of the

claimant's impairments must be considered. The designation of an impairment as

"severe" at Step Two only has the effect of pushing the sequential analysis to the

next step.

Plaintiff also alleges that the ALJ did not follow the "slight abnormality

standard" when she determined that Plaintiff's conditions, other than bipolar

disorder, were non-severe. (Doc. 11, p. 23). However, the ALJ looked at each of

the plaintiff's other alleged impairments in turn and determined either that it "[had]

not been shown to have lasted at least twelve months during the relevant period

and [was] non-severe" or that the "impairment [constituted], at most, only a slight

abnormality that cannot reasonably be expected to produce more than minimal, if

any, work-related limitations, and is non-severe." (Tr. at 14). The ALJ carefully explained her findings for each alleged impairment by reference to medical evidence in the record. Having the reviewed the medical evidence, the court has no reason to second-guess the ALJ's application of the slight abnormality standard. Accordingly, to the extent that Plaintiff seeks remand on that ground, such request is declined.

Plaintiff additionally seeks remand on the ground that the ALJ violated SSR 96-3p by failing to consider the effects of the plaintiff's conditions which the ALJ found to be non-severe. (Doc. 11, p. 23). SSR 96-3p is a policy interpretation document that interprets 20 CFR 404.1502, 416.920, and 416.924 to clarify that:

> Because a determination whether an impairment(s) is severe requires an assessment of the functionally limiting effects of an impairment(s), symptom-related limitations and restrictions must be considered at this step of the sequential evaluation process, provided that the individual has a medically determinable impairment(s) that could reasonably be expected to produce the symptoms. If the adjudicator finds that such symptoms cause a limitation or restriction having more than a minimal effect on an individual's ability to do basic work activities, the adjudicator must find that the impairment(s) is severe and proceed to the next step in the process even if the objective medical evidence would not in itself establish that the impairment(s) is severe. In addition, if, after completing development and considering all of the evidence, the adjudicator is unable to determine clearly the effect of an impairment(s) on the individual's ability to do basic work activities, the adjudicator must continue to follow the sequential evaluation process until a determination or decision about disability can be reached.

1996 WL 374181 at *2 (July 2, 1996). The effect of this interpretation is that an ALJ should in essence "err" on the side of allowing the five-step sequential analysis to move forward. See id. In Ms. White's case, the analysis did move on to Step Three where the ALJ considered whether she had "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416. 925, and 416.926)," and found that she did not. (Tr. at 16).

Additionally, the court has reviewed the medical evidence and has found substantial evidence to support the ALJ's finding that Plaintiff's limitations, other than bipolar disorder, were non-severe. As an example, Plaintiff asserts that her low back pain ("lumbago") should have been considered severe. Plaintiff presented to the emergency room at the Gadsden Regional Medical Center complaining of lower back pain on October 4, 2012, and October 11, 2012. (Tr. at 346-7, 505). Since then, Plaintiff has not complained of lower back pain again. See, e.g., (Tr. at 14, 339-43, 427-8, 429-47, 471-504, 518-9, 520-49). Plaintiff additionally had an x-ray on September 6, 2013, where it was noted that she had minimal underlying rotary scoliosis that was possibly positional (i.e. an artifact of the position in which the x-ray was taken). (Tr. at 420). Other than this, no abnormality was noted. Id. There is nothing in the medical records to suggest that

the plaintiff ever experienced back pain during the period she alleged it contributed to her being disabled. Therefore, the ALJ properly assessed that this condition was non-severe. The other ailments that the plaintiff alleges as "severe" present similarly one-sided facts: she reported chronic "pain in limb" on only one occasion (Tr. at 427) and her anemia was well-treated with medication. The court finds no error in the ALJ's assessment that these ailments are non-severe.

## C. Opinion of the Consultative Examiner

As addressed previously, the ALJ must consider several factors in determining the weight to be given to a medical opinion. 20 C.F.R. § 404.1527(c). Different types of medical sources are entitled to differing weights. The opinion of a treating physician, who has an ongoing relationship with the patient, is entitled to the greatest weight. 20 C.F.R. § 404.1502. A non-treating physician or psychologist who has examined the patient but does not treat the patient is entitled to less weight. Id. The least weight is given to a non-examining medical source, who may provide an opinion based on a review of the record but who has not examined the patient. Id. Even so, any medical source's opinion can be rejected where the evidence supports a contrary conclusion. See, e.g., McCloud v. Barnhart, 166 F. App'x 410, 418-19 (11th Cir. 2008).

It is difficult to tell on what grounds that the plaintiff challenges the ALJ's decision to afford "limited weight" to the opinion of the consultative examiner

("CE") June Nichols because the brief on the matter contains over four pages of block quotations and not a single sentence explaining to the court the relevance of those quotations to the case at hand. To the extent that the plaintiff argues that the ALJ had to accept the opinion of the CE simply because she was hired by the Commissioner, this argument is without merit. The ALJ may reject the opinion of any medical source, regardless of who hired her, if the opinion is not supported by the evidence. See, e.g., McCloud v. Barnhart, 166 F. App'x 410, 418-19 (11th Cir. 2008).

Plaintiff also cites McClurkin v. Social Security Administration. In McClurkin, "the Eleventh Circuit reversed the denial of benefits because the ALJ failed to state with at least 'some measure of clarity' the grounds for his decision in repudiating the opinion of an examining physician." (Doc. 11, p. 26) (citing McClurkin v. Soc. Sec. Admin., 625 F. App'x 960 (11th Cir. 2015). In that case the ALJ did not did explicitly state the weight given to the opinion of a CE or explain the reasons for giving weight to the other opinions in the case. Id. at 962. The Eleventh Circuit determined that "when the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion." Id. (citing Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).

In Ms. White's case, however, the ALJ clearly articulated the weight given to the opinion of the CE and the reasons for it. She stated:

> Limited weight is given to Dr. Nichols['] opinion for various reasons. As to her opinion regarding a guarded prognosis for significant improvement because of the claimant's past treatment and medication without resolution of symptoms, the undersigned notes that any lack of improvement was due to the fact that the claimant has not consistently participated in treatment. Nor has she taken her medications consistently either. In addition, Dr. Nichols' diagnoses are inconsistent with the CED treatment notes which show a much higher level of functioning. There are other differing opinions regarding the claimant's actual diagnosis. While Dr. Nichols included post-traumatic stress disorder as a diagnosis, the medical staff at C.E.D. considered and disregarded this diagnosis (Exhibit 3F).

(Tr. at 22). Given that the ALJ clearly articulated the weight assigned to the opinion and the reasons why the opinion was given that weight, the court finds that the ALJ complied with the mandate of McClurkin. The ALJ explained her reasoning "with at least 'some measure of clarity.'"

Plaintiff also points to a line of cases beginning with Wilder v. Chater, a case out of the Seventh Circuit. (Doc. 11, p. 28) (citing Wilder v. Chater, 64 F.3d 335, 337-8). In Wilder, the Seventh Circuit remanded a denial of benefits because the ALJ disregarded the opinion of a psychiatrist appointed by the Commissioner. Wilder, 64 F.3d at 337. The court was skeptical of this decision because the psychiatrist was the only medical opinion in the case which could establish the

onset date of the plaintiff's severe depression, a fact that was critical to the case. Id. Wilder and its progeny have come to stand for the proposition that an ALJ may not disregard the only medical opinion in a case simply because the ALJ finds that the claimant's current activities are incongruous with the opinion. See Wilder, 64 F.3d 335; Blakes ex rel. Wolfe v. Barnhart, 331 F.3d 565 (7th Cir. 2003); Haag v. Barnhart, 333 F. Supp. 2d 1210, 1220 (N.D. Ala. 2004).

The facts of Wilder do not correspond to the plaintiff's case. It is correct that the ALJ afforded "limited weight" to the opinion of Dr. Nichols, the consultative examiner. (Tr. at 22). However, Dr. Nichols was not the only medical opinion in the case related to the plaintiff's psychiatric health. (Tr. at 20-2). The ALJ considered Plaintiff's treatment records from CED; the opinion of Dr. Feist; the opinion of Ms. Ridley, a therapist at CED; the opinion of Dr. Nichols; and the opinion of the state agency psychologist, Guendalina Ravello, Ph. D. Id. The ALJ's opinion was based on multiple medical opinions and the medical records, rather than a hunch as was the issue in Wilder.

Additionally, the court has reviewed the medical records and found substantial evidence to support the ALJ's decision to afford only limited weight to the opinion of Dr. Nichols. At the evaluation, Dr. Nichols described the plaintiff as "neat and clean," with normal and clear speech, but having a depressed mood and decreased appetite and energy. She found the plaintiff to follow a clear stream

of consciousness, and to be "oriented to person, place, time and situation." (Tr. at 417). She also found Plaintiff's "speed of mental processing adequate," memory functions to be "grossly intact," "general fund of knowledge to be adequate," thought processes to be "within normal limits," and judgment and insight to be good. Id. These observations are inconsistent with the extremely severe limitations and impairment that Dr. Nichols opined existed. See (Tr. at 415-8). Accordingly, the ALJ's assessment of the weight given to the consultative examiner's opinion was not erroneous.

### D. Ability to Perform Past Work

Ms. White asserts that the ALJ's determination that she could perform her past work as a poultry eviscerator and a poultry trimmer was not supported by substantial evidence and was not in accordance with proper legal standards. (Doc. 11, p. 30). She argues that the ALJ had the duty to develop the record as to the physical and mental demands of her past work so as to allow a comparison of Ms. White's current limitations. Id. The Commissioner replies that the ALJ properly relied upon the testimony of the Vocational Expert (VE) in response to a hypothetical that incorporated all of the plaintiff's limitations. (Doc. 16, p. 29-31). Further, if the plaintiff believed that the record was lacking, she was represented by an attorney at the hearing who could and should have elicited testimony to carry

her burden of proving she was unable to perform her past relevant work.  Id.  The ALJ specifically found:

> The claimant is capable of performing past work as a poultry eviscerator, DOT Code 525.687-074, light, unskilled, SVP of 2, and a poultry trimmer, DOT Code 781.687-070, light, unskilled, SVP of 2. Neither requires the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

(Tr. at 23).  In addition to the past work, the ALJ found that the plaintiff could perform the jobs of cleaner, hand packer, and laundry worker.  (Tr. at 24).

In a disability determination, the burden is on the claimant to establish that she is no longer able to perform her past work.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  This burden is a heavy one.  Id.  Once Plaintiff carries this burden, the burden switches to the Commissioner to show other jobs in the national economy that Plaintiff can perform.  Id.  In establishing the ability of a plaintiff to perform any type of work, past or otherwise, the ALJ can rely on either the "Grids" or the testimony of a Vocational Expert.  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). Where the ALJ poses a hypothetical to the VE that encompasses all of the claimant's limitations, the testimony of the VE is substantial evidence of the claimant's ability or inability to perform work.  Id.; Arnold v. Comm'r Soc. Sec. Admin., 724 F. App'x. 772, 781 (11th Cir. 2018).

The ALJ's determination that the plaintiff could perform her past work is supported by substantial evidence and is in accordance with proper legal standards. The ALJ posed a hypothetical question to the VE that encompassed all of the plaintiff's limitations, and the VE confirmed that her past work was available to Ms. White. Additionally, the ALJ posed another hypothetical in which such hypothetical person was limited to a light level of exertion. Still, the VE confirmed that Plaintiff's past work as a poultry eviscerator and poultry trimmer was available. The relevant testimony given by the VE was as follows:

> [ALJ]: All right. Please identify by titles, both exertional, skill level, and a DOT number the work that was performed over the last 15 years as we just discussed.

> [VE]: Okay. Poultry eviscerator, 525.687-074, light, unskilled, SVP of 2. And trimmer, 781.687-070, light, unskilled, SVP of 2.

> …

> [ALJ]: If we have an individual of the claimant's same age, education, and past work history who, let's see, who has no exertional limitations, who can understand, remember, and carry out simple work instructions, but not those that are [INAUDIBLE] or complex. Can adjust to workplace changes that are infrequent and introduced gradually and occasionally can interact with the general public, frequently interact with co-workers and supervisors and would be capable of sustaining attention, concentration for at least two hour blocks at [a] time with normal breaks in an 8 hour day. First would that individual be able to perform any of the claimant's past work?

> [VE]: Yes, Your Honor. Both.

[ALJ]: Okay. In addition to that past work, is there other work that individual would be capable of performing?

[VE]: Yes, Your Honor. Cleaner, 358.687-010, medium, unskilled, SVP of 2, 3,200 in Alabama, 275,000 in the U.S. Hand packager, 920.587-018, medium, unskilled, SVP of 2, 4,200 in Alabama, 333,000 in the U.S. Laundry worker, 361.684-014, medium, unskilled, SVP of 2, 1,000 in Alabama, 67,800 in the U.S.

[ALJ]: Okay if I continue with that same individual but now note that they are—have some exertional limitations that limits her to work at the light level of exertion based upon the Social Security Regulations. No frequent climbing of ramps and stairs. Occasional climbing of ropes, ladders, or scaffolds. Can frequently balance, stoop, kneel, crouch and crawl, constantly reach, handle, finger, and feel, First, would that individual—and again we're adding onto the mental restrictions from hypothetical one, so—

[VE]: Right.

[ALJ]: Would that individual still be able to perform the claimant's past work?

[VE]: Yes, Your Honor.

[ALJ] And is there other work at the light level that individual would be capable of performing as well?

[VE]:Yes. Your Honor. Marker, 209.587-034, light, unskilled, SVP of 2, 4,000 in Alabama, 320,000 in the U.S. Assembler, 706.684-022, light, unskilled, SVP of 2, 2,000 in Alabama, 235,000 in the U.S. Inspector and hand packager, 559.687-014, light, unskilled, SVP of 2, 2,400 in Alabama, 164,000 in the U.S.

(Tr. at 56-8).  The hypotheticals posed by the ALJ included all of the plaintiff's

limitations that were reflected in her RFC; therefore, the ALJ properly relied upon

the VE's testimony in determining that the plaintiff had the ability to perform past work.  See (Tr. at 17-8).  Additionally, any error in determining that the plaintiff could perform past work is harmless, because the VE and the ALJ determined that there were other jobs in the national economy that the plaintiff could perform.  See (Tr. at 57-8).  The plaintiff does not challenge in this appeal the finding that she could perform other jobs.

### E. Claimant Credibility

The Eleventh Circuit established a standard to direct ALJs in evaluating a claimant's subjective allegations of disabling pain and other symptoms.  Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. See Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, the "standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); see also Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if she articulates explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). Under Social Security Ruling ("SSR") 96-7p,[3]

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 61 FR 34483-01 (Effective July 2, 1996) (superseded by SSR 16-3p, 2017 WL 5180304, at *10 (eff. March 26, 2016)). Although the Eleventh Circuit

---

[3] SSR 96-7p is applicable to this case as it was in effect at the time of the ALJ's determination on August 15, 2016. SSR 96-7p was superseded by SSR 16-3p, effective March 26, 2016; however, it does not apply retroactively. See Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1308 (11th Cir. 2018) ("SSR 16-3p applies only prospectively…").

does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" Dyer, 395 F.3d at 1210 (quoting Foote, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." Id.

Here, the plaintiff met Step 1 of the standard by establishing that she had a medically determinable impairment. See Dyer, 395 at 1210. The plaintiff established that she had one severe impairment—bipolar disorder—and multiple non-severe impairments, including anemia and bleeding. (Tr. at 13-4, 18). However, the ALJ found that the plaintiff did not meet the second or third steps of the pain standard. (Tr. at 18); see Dyer, 395 at 1210. The ALJ found that the plaintiff's statements about the limiting effects of her conditions could not be fully credited because the medical evidence presented in the case did not support "the intensity, persistence, and limiting effects" described by the plaintiff. (Tr. at 18). Additionally, the ALJ believed that the plaintiff's medically determinable impairments were not severe enough to give rise to the plaintiff's alleged symptoms. Id. The ALJ further explained,

> The claimant alleges multiple physical impairments unsupported by the medical evidence. Her allegations are extremely exaggerated and unsupported by the objective medical evidence of record. At the

hearing, she alleged significant limitations in lifting, sitting, standing, and walking due to physical limitations; however, her physical examinations showed little abnormalities. In addition, she alleged problems using her right arm, and she alleged a daily pain of an eight (8). However, she consistently reported zero (0) pain levels and had only sought treatment on one (1) occasion for her right arm. As already explained… above, the objective medical evidence does not support her allegations of multiple physical impairments that cause significant limitations.

…

Turning to the claimant's mental impairments, the undersigned notes that the claimant filed her application for supplemental security income on April 18, 2013. Notably, the claimant's file has medical records going back to 2005; however, there is no evidence of any mental impairment prior to that time [of the filing of the application]. Notably, however, the claimant sought treatment from Dr. Odjegba with complaints of anxiety and depression in May 2013, shortly after filing her application, and again for follow-up on August 30, 2013. The claimant has no further mental health treatment and did not report any more depression, anxiety, or other mental issues to Dr. Odjegba thereafter. Indeed, it was not until a year later in July 2014 that she sought further mental health treatment. Interestingly, the claimant contacted CED for treatment right before obtaining representation for her disability case. The claimant contacted CED in July 2014 and scheduled her intake appointment for September 29, 2014. Her Appointment of Representative form at Exhibit 5B is dated August 14, 2014 and her first session for intake evaluation[] was on September 29, 2014. On her intake form the claimant noted she had not had any mental health treatment since 2004 or 2006. The claimant was diagnosed with bipolar disorder at CED Mental Health Center. She attended therapy on two (2) occasions, October 23, 2014 and November 19, 2014. She canceled her December 9, 2014 appointment, and it was rescheduled for January 29, 2015, but there is no evidence she returned for that visit. Her next therapy appointment was on March 3, 2015. At the time of the hearing, the claimant had been seen on three occasions in 2015; on March 3, 2015, March 11, 2015, and April 2015 (Exhibits 7F, 9F, and 15F).

The claimant's main complaint has been the inability to be around people and mood swings. She has not had a suicide attempt since she was a child. Her recent therapy records show symptoms of depression (crying, sleeping, isolation); anxiety (chest tightness); and mania (spending, talking, and cleaning). However, there are significant gaps in treatment and she has cancelled or failed to show up for counseling. In addition, there have been significant periods of time since the alleged onset date during which the claimant has not taken any medications for those symptoms. The claimant provided a pharmacy printout and it does not show consistent use of any psychotropic medications. She reported to Dr. Odjegba on August 26, 2014 she was not using her bupropion that he prescribed (Exhibits 7F, 9F, and 15F). Interestingly, at the hearing, the claimant alleged she is unable to watch a two-hour (2-hour) movie; however, she noted in her Function Report that she watches the ID channel all day long and does nothing else because she has to watch it (Exhibit 5E). The claimant also testified that she enjoys reading and reads a lot.

Based on the evidence, the evidence does not support the claimant's statements concerning the intensity, persistence and limiting effects of her bipolar disorder. While it is reasonable that the claimant may experience some symptoms that would cause some mental limitations, the objective medical evidence does not support a complete inability to work.

(Tr. at 19-20).

The court finds that there is substantial evidence to support the ALJ's finding that the plaintiff is not credible. Plaintiff's medical records support that she has a degree of mental limitation due to bipolar disorder. (Tr. at 429-447, 550, 551-558). However, Plaintiff has only sporadically reported any physical ailments and her reporting of those is incongruous with the physical limitations she alleged during her disability determination. See,

e.g., (Tr. at 339-413, 419-20). The ALJ stated adequate reasons why she disregarded the plaintiff's testimony regarding her subjective symptoms and did so with the requisite degree of specificity. See Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988). The record need not be replete with evidence that would support a finding that the plaintiff was not credible in order for this court to affirm the ALJ. Where, as here, the ALJ specifically finds that the plaintiff is not credible and there is substantial evidence to support that determination, the court will not intervene. See Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 782 (11th Cir. 2014).

*F. Listing 12.04 and 12.06*

The ALJ found that the plaintiff did not meet the criteria for Listing 12.04[4] or 12.06[5]. The burden of proving that she meets or equals a Listing is on the

---

[4] 12.04 **Affective Disorders**: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

    A. Medically documented persistence, either continuous or intermittent, of one of the following:

        1. Depressive syndrome characterized by at least four of the following:

            a. Anhedonia or pervasive loss of interest in almost all activities; or

            b. Appetite disturbance with change in weight; or

            c. Sleep disturbance; or

            d. Psychomotor agitation or retardation; or

            e. Decreased energy; or

            f. Feelings of guilt or worthlessness; or

            g. Difficulty concentrating or thinking; or

            h. Thoughts of suicide; or

            i. Hallucinations, delusions, or paranoid thinking; or

        2. Manic syndrome characterized by at least three of the following:

        a. Hyperactivity; or

        b. Pressure of speech; or

        c. Flight of ideas; or

        d. Inflated self-esteem; or

        e. Decreased need for sleep; or

        f. Easy distractibility; or

        g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

        h. Hallucinations, delusions or paranoid thinking;

    or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B. Resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration;

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1. Repeated episodes of decompensation, each of extended duration; or

    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. § 404, subpart p, appendix 1 (Effective: August 12, 2015 to May 23, 2016).


[5] 12.06 **Anxiety Related Disorders**: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders. The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

    1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

        a. Motor tension; or

        b. Autonomic hyperactivity; or

        c. Apprehensive expectation; or

        d. Vigilance and scanning;

plaintiff.  Davenport v. Astrue, 403 F. App'x 352, 353 (11th Cir. 2010) (citing

Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991).  In order to meet a Listing,

a plaintiff must meet all of the specific criteria for that listing.  Sullivan v. Zebley,

493 U.S. 521, 530 (1990).  It is not sufficient for Plaintiff to demonstrate that she

has an ailment that manifests only a few or even most of the criteria, even if the

ailment manifests those criteria in an especially severe way.  Id.  Plaintiff must

carry the burden by presenting evidence of a diagnosis of a condition covered by

the Listings and a treatment history demonstrating that the durational requirements

are met.  Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002).  If Plaintiff is

instead asserting that she has an ailment which equals a Listing, she must show that

---

or
2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
AND
B. Resulting in at least two of the following:
1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.
OR
C. Resulting in complete inability to function independently outside the area of one's
home.

20 C.F.R. § 404, subpart p, appendix 1 (Effective: August 12, 2015 to May 23, 2016).

the ailment(s), either singularly or in combination, equal the Listing in terms of severity.  Id.

The ALJ found that the plaintiff did not meet the criteria for Listing 12.04. (Tr. at 16).  Though the ALJ did not address it specifically, if Plaintiff does not meet the criteria for Listing 12.04, she also cannot meet the criteria of Listing 12.06.  Compare 20 C.F.R. § 404, Subpart P, Appendix 1 (Effective: August 12, 2015 to May 23, 2016) with 20 C.F.R. § 404, Subpart P, Appendix 1 (Effective: August 12, 2015 to May 23, 2016).  The ALJ considered whether the plaintiff met the Paragraph B requirements but found that she had, at most, moderate difficulties in social functioning and in maintaining concentration, persistence, or pace, and had not had any episodes of decompensation of extended duration.  (Tr. at 16-7). Similarly the ALJ found that the plaintiff did not meet the Paragraph C criteria because she had not experienced repeated episodes of decompensation, she did not demonstrate residual disease process which would be thought to result in episodes of decompensation with a minimal increase in mental demand, and she had not shown the inability to function outside of a highly supportive living arrangement. Id. at 17.

The ALJ noted that the plaintiff could independently perform personal care tasks and could prepare her own simple meals.  (Tr. at 17).  Additionally, the plaintiff could maintain her home through cleaning, laundry, and household

repairs.  Id.  While the plaintiff reported that she did not like being in public or in crowds of people, she did enjoy being around her children and her grandchildren. Id.  Similarly, she was able to attend church services once per month and shop for groceries monthly with her father.  Id.  She also managed her own finances and bank accounts.  Id.  She also reported the ability to handle and respond to verbal instruction.  (Tr. at 17).  The court verified these findings with the medical documentation in the record.  Based upon the plaintiff's reporting of her activities and the medical evidence, it appears that the plaintiff was able to function largely autonomously though she had a degree of mental impairment.

As noted above, the scope of the court's review is narrow. This court is not authorized to reweigh evidence or reevaluate the factual findings of the ALJ. The determination of whether a plaintiff meets the criteria of a Listing is a legal conclusion that this court can and does review with close scrutiny; however, this determination requires careful review and weighing of medical evidence and reports. Where, as here, the ALJ has made clear that she considered the facts, compared them to the statutory requirements, and determined that the plaintiff did not meet the criteria in the Listings, the court will not intervene.  Additionally, the plaintiff has failed to present any specific evidence to the court that demonstrates that she meets the criteria for a Listing, and the court's review of the medical evidence has failed to find any evidence that demonstrates that she meets the

criteria. It is clear that Plaintiff has difficulties in mental functioning; however, a review of the record demonstrates that there is substantial evidence to support the ALJ's finding of moderate, rather than marked, difficulties.

### G. Appeals Council and New Evidence

As a general matter, "a claimant may present evidence at each stage of the administrative process." Hargress, 874 F.3d at 1290 (citing Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007) and 20 C.F.R. § 404.900(b)). "The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Ingram, 496 F.3d at 1261; 20 C.F.R. § 404.900(b). Only "if a reasonable possibility exists that the evidence would change the administrative result" may evidence be considered material. Hargress, 874 F.3d at 1291 (citing Washington v. Soc. Sec. Admin., 806 F.3d 1317, 1321 (11th Cir. 2015).

The Eleventh Circuit has held that "[n]ew evidence is chronologically relevant if it 'relates to the period on or before the date of the [ALJ's] hearing decision." Hargress, 874 F.3d at 1291 (quoting 20 C.F.R. §§ 404.970(b), 416.1470(b)). "Evidence of deterioration of a previously considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether the claimant was disabled during the relevant time period

under review." Ashley v. Comm'r, Soc. Sec. Admin., 707 F. App'x 939, 944 (11th

Cir. 2017) (citing Wilson v. Apfel, 179 F.3d 1276, 1279 (11th Cir. 1999).

However, in Hargress, the Eleventh Circuit noted "'that medical opinions based on

treatment occurring after the date of the ALJ's decision may be chronologically

relevant.'" 874 F.3d at 1291 (citing Washington, 806 F.3d at 1322). The Court

went on to explain that

> In Washington, the claimant submitted to the Appeals Council a
> psychologist's evaluation and accompanying opinion about the degree
> of the claimant's mental limitations, which were prepared seven
> months after the ALJ's decision. *Id.* at 1319-20. This Court
> concluded that the psychologist's materials were chronologically
> relevant because: (1) the claimant described his mental symptoms
> during the relevant period to the psychologist, (2) the psychologist
> had reviewed the claimant's mental health treatment records from that
> period, and (3) there was no evidence of the claimant's mental decline
> since the ALJ's decision. *Id.* at 1319, 1322-23 (limiting its holding to
> "the specific circumstances of this case").

*Id.* The Court did not "address Hargress's argument that the denial of benefits was

erroneous when th[e] new evidence [was] considered." Id. at 1291-92.

Ms. White's assertion that the Appeals Council failed to consider the new

evidence may be addressed using the same analysis that was used in Mitchell v.

Commissioner, Social Security Administration, 771 F.3d 780 (11th Cir. 2014).

The Appeals Council in Mitchell "denied [the claimant's] request for review,

explaining that it had considered [his] reasons for disagreeing with the ALJ's

decision as well as his additional evidence," and determined that the new evidence did not provide a basis for changing the ALJ's decision. Id. at 782. The Appeals Council in Mitchell did not engage in a discussion of the new evidence. Id. The Eleventh Circuit held that "the Appeals Council is not required to explain its rationale when denying a request for review." Id. at 785.

Like the Appeals Council in Mitchell, the Appeals Council in this case denied the plaintiff's request for review. The Appeals Council stated, "We have found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review." (Tr. at 1). They further elaborate that under the rules, the Appeals Council will review a case if they "receive new and material evidence and the decision is contrary to the weight of all the evidence now in the record." (Tr. at 1). This court has no reason to question whether the Appeals Council it applied the rules, reviewed the evidence, and did not find grounds to review the case. Accordingly, the claimant's argument that the Appeals Council failed to consider the new evidence is without merit.

*H. Side Effects of Claimants Medication*

Ms. White argues that the ALJ failed to adequately consider the side effects of her medication. In Walker v. Comm'r of Soc. Sec., the Eleventh Circuit Court of Appeals explained that,

[i]n determining whether a claimant's impairments limit her ability to work, the ALJ considers the claimant's subjective symptoms, which includes the effectiveness and side effects of any medications taken for those symptoms. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). We have concluded that, under certain circumstances, an ALJ's duty to develop a full record can include investigating the side effects of medications. Compare Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981) (concluding that ALJ failed to fully develop record where *pro se* claimant testified that she took eight different prescription medications and was "kind of zonked most of the time" and ALJ failed to either elicit testimony or make findings regarding effect of medications on her ability to work), with Passopulos v. Sullivan, 976 F.2d 642, 648 (11th Cir. 1992) (concluding that ALJ did not fail to develop record where claimant did not present evidence he was taking medication that caused side effects), and Cherry v. Heckler, 760 F.2d 1186, 1191 n. 7 (11th Cir. 1985) (concluding the Secretary, upon reopening, did not have duty to further investigate side effects of counseled claimant's medications where claimant did not allege side effects contributed to her disability and stated only that her medication made her drowsy).

However, the ALJ's obligation to develop the record does not relieve the claimant of the burden of proving she is disabled. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Thus, the claimant must introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work. See id.

404 F. App'x 362, 366 (11th Cir. 2010). In Walker, the claimant testified about her side effects, indicating that her only side effects "were dizziness and headaches." Id. In his opinion, "[t]he ALJ noted this testimony in his decision." Id. However, Walker had complained about headaches and dizziness as symptoms, not side effects, to her doctors. Id. at 367. The Eleventh Circuit held

that "the ALJ was not under a duty to elicit further information about Walker's medication side effects." Id.

Furthermore, "[w]here an unrepresented claimant's hearing testimony raises a question about the side effects of medications, we have concluded that the ALJ has a special duty to elicit additional testimony or otherwise make a finding about such side effects." Colon ex rel. Colon v. Comm'r of Soc. Sec., 411 F. App'x 236, 238 (11th Cir. 2011). However, "where a represented claimant makes a similar statement, but does not otherwise allege that the side effects contribute to the alleged disability, we have determined that the ALJ does not err in failing 'to inquire further into possible side effects.'" Id. (quoting Cherry v. Heckler, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985). In Colon, the Eleventh Circuit found that

> [t]he ALJ noted the obligation to consider the side effects of Mr. Colon's medications when assessing his subjective complaints and summarized the limited evidence in the record about the side effects. While Mr. Colon had reported some side effects from his medications in a disability report and his lawyer had given the ALJ a list of Mr. Colon's medications and their side effects, Mr. Colon did not mention his medication side effects in response to the ALJ's questions about why he could not return to work. Because Mr. Colon was represented at his hearing, the ALJ was not required to inquire further into Mr. Colon's alleged side effects; and Colon has not shown that the ALJ applied incorrect legal standards. See [Cherry, 760 F.2d at 1191 n.7].

Id. The Eleventh Circuit held that "[s]ubstantial evidence support[ed] the ALJ's decision to discredit Mr. Colon's complaints as they related to

medication side effects: none of Mr. Colon's doctors reported any side effects from his medications, and he did not complain to them of any side effects." Id.

On a Physical Capacities Form dated May 28, 2015, Dr. Odjegba stated that the side effects of the plaintiff's medication were drowsiness and nausea and vomiting. (Tr. at 560). However, Plaintiff never reported these symptoms to Dr. Odjegba during her visits. See, e.g., (Tr. at 339-343, 427-8, 471-504, 518-9, 520-49). Additionally, the plaintiff testified before the ALJ that her medication caused her to feel dizzy and have to lie down. (Tr. at 42). However, this also was never reported to her doctors. See, e.g., (Tr. at 339-343, 427-8, 471-504, 518-9, 520-49). The ALJ's determination that the side effects of the plaintiff's medication were not a significant issue is supported by substantial evidence when, as in this case, the plaintiff never complained of the side effects and the record does not demonstrate that the doctors who treated the plaintiff had concerns about the side effects of medication. See Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990). Therefore, Ms. White's argument is without merit.

## IV.       Conclusion

Upon review of the administrative record, and considering all of Ms. White's arguments, the court finds the Commissioner's decision is supported by

substantial evidence and is in accord with the applicable law. A separate order will be entered affirming the determination of the Commissioner and dismissing this case with prejudice.

DONE this 11th day of September, 2018.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE